**M.C. CONSTRUCTION CORP., Plaintiff,**

**v.**

**GRAY COMPANY, Defendant.**

**Civil Action No. 98–7–D.**

United States District Court,
W.D. Virginia,
Danville Division.

July 30, 1998.

William Weldon Bennett, Jr., William W. Bennett, Jr. & Associates, Halifax, VA, James A.L. Daniel, Daniel, Vaughan, Medley & Smitherman, P.C., Danville, VA, Darren Joseph Duzyk, Stites & Harbison, Lexington, KY, for James N. Gray Co.

James A.L. Daniel, Daniel, Vaughan, Medley & Smitherman, P.C., Danville, VA, for M.C. Const. Co.

### MEMORANDUM OPINION

KISER, Senior District Judge.

The parties' cross motions for summary judgment are currently before the court. For the reasons stated herein, I am of the opinion that, (1) the plaintiff's motion should be DENIED, (2) the defendant's motion for summary judgment should be GRANTED as to the defendant's counterclaim for a declaratory judgment that the Federal Arbitration Act preempts Va.Code Ann. § 8.01–262.1 and (3) because I am without power to compel the plaintiff to arbitrate this matter in Kentucky, the case should be transferred to the United States District Court for the Eastern District of Kentucky, Lexington Division for further proceedings.

### I. BACKGROUND

M.C. Construction Corporation ("MC"), a North Carolina Corporation and Gray Company ("Gray"), a Kentucky corporation, entered into two subcontracts in May and October 1996 for work to be performed in Halifax County, Virginia. The two subcontracts contained largely identical provisions, including (1) an arbitration clause, (2) a choice of law clause [1] and (3) an arbitration forum selection

---

1. Section 17.1 states:
"*GOVERNING LAW.* This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Kentucky applicable to agreements executed, delivered, and to be performed solely within the Commonwealth of Kentucky."

Another related clause in Section 16.1 states: "The provisions for mediation and arbitration shall be specifically enforceable under the Kentucky version of the Uniform Arbitration Act, K.R.S. Chapter 417."

clause.[2] Problems arose, delays resulted and the parties have both alleged damages from the delays.

In September 1997, MC filed a motion for judgment in Virginia state court seeking enforcement of the May 1996 subcontract. Apparently, the state court ordered the parties to arbitrate that contract. In January 1998, MC again filed a motion for judgment in state court, this time requesting a declaratory judgment that, pursuant to Va.Code Ann. § 8.01–262.1, the arbitration should take place in Virginia.[3]

Gray removed the case to federal court and filed an answer and counterclaim on February 6, 1998. In its counterclaim, Gray seeks a declaration that: (1) pursuant to Kentucky law the situs of the arbitration should be Kentucky; (2) Kentucky law applies; and (3) pursuant to the FAA the situs of the arbitration should be Kentucky. Jurisdiction for the removal and counterclaim is alleged to be based on 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 2201 (the Declaratory Judgment Act) and 9 U.S.C. § 4 (the Federal Arbitration Act). Both parties have filed motions for summary judgment on their respective claims.

## II. THE MOTION FOR SUMMARY JUDGMENT

### A. THE STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). There is a genuine issue of fact if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. THE DEFENDANT'S MOTION

The defendant argues that (1) Virginia choice of law rules apply to this dispute, (2) Virginia law recognizes and enforces choice of law provisions, and (3) the contract clause selecting Kentucky law should be enforced. Because Kentucky law applies, the defendant argues that Va.Code Ann. § 8.01–262.1 is inapplicable. In the alternative, the defendant argues that the Federal Arbitration Act preempts Va.Code Ann. § 8.01–262.1.

### C. THE PLAINTIFF'S MOTION

The plaintiff argues that under *Erie*, a federal court sitting in diversity must apply the substantive law of the state in which it is sitting. As a result, the plaintiff's assert that Va.Code Ann. § 8.01–262.1 requires the arbitration to take place in Virginia. Moreover, the plaintiff notes that if the Federal Arbitration Act applies, this court can only compel arbitration within this district.

## III. ANALYSIS

### A. SUBJECT MATTER JURISDICTION

The defendant's notice of removal states that subject matter jurisdiction is based on diversity, 28 U.S.C. § 1332, and that "[j]urisdiction is also authorized by 28 U.S.C. § 2201 [the Declaratory Judgment Act] and 9 U.S.C. § 4 [the Federal Arbitration Act]." The plaintiff has not contested the validity of

---

**2.** The last sentence of Section 16.1 states:

"The site for mediation and arbitration shall be at the Project site, or in Glasgow, Kentucky, or Lexington, Kentucky, as selected by Gray, unless required otherwise by Gray's agreement with the Owner."

**3.** § 8.01–262.1 reads:

The forum for any arbitration proceeding required in such a [construction] contract ... shall be in this Commonwealth. If the contract provides for arbitration proceedings outside the Commonwealth, such provision is unenforceable and the arbitration proceeding shall be in the country or city where the work is performed.

subject matter jurisdiction, but because of the unique procedural posture of this case. I believe that I should address the issue *sua sponte*. *See Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) (court can address this issue *sua sponte* ).

### 1. The Federal Arbitration Act

■ The defendant alleges jurisdiction under the Federal Arbitration Act. The Supreme Court explained the FAA's jurisdictional effect as follows:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement. to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 618 (4th Cir.1997). The defendant is therefore in error to the extent it asserts that subject matter jurisdiction for its notice of removal and counterclaim is based on the FAA.

### 2. The Declaratory Judgment Act

■ The defendant also alleges jurisdiction under the Declaratory Judgment Act. "The operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). In passing the Act, Congress "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Id.* Relief under the Act can "only be given if the requisites of juris-

diction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts." *Id; see also* Charles A. Wright, Arthur R. Miller· & Mary Kay Kane, Federal Practice And Procedure: Civil § 2766 (1998); *Gibraltar,* 104 F.3d at 619. Jurisdiction is therefore not proper under the Declaratory Judgment Act.

### 3. Diversity Jurisdiction

■ The defendant also alleges that jurisdiction exists based on diversity. The parties are diverse: The plaintiff is incorporated in North Carolina and has its principal place of business in Halifax County, Virginia and the defendant is incorporated in Kentucky and has its principal place of business in Kentucky.

■ There is at least some question as to the amount in controversy. Diversity jurisdiction requires an amount in controversy of greater than $75,000. 28 U.S.C. § 1332(a)(1). The amount in controversy will be deemed to exceed the jurisdictional minimum unless it "appear[s] to a legal certainty that the claim is really for less· than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ "In an action for declaratory judgment, the amount in controversy is measured by the amount of the object of the obligation." *Hunt v. Washington State Apple Ad. Comm'n*, 432 U.S. 333, 347–48, 97 S.Ct. 2434, 53 L.Ed.2d 383 ·(1977). "When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the policy and the value of the right to be protected is plaintiff's potential liability under that policy." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252 (5th Cir. 1998). The amount in controversy in a declaratory judgment action "is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392 (2d Cir.1975) (citing *Smith v. Adams*, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895 (1889)).

The parties have suggested that at least several hundred thousand dollars, and perhaps as much as several million dollars, are at stake in this arbitration. That amount clearly satisfies the jurisdictional minimum.

### B. CHOICE OF LAW

#### 1. Which State's Choice of Law Rules Apply?

As a federal court sitting in diversity, I must normally apply the substantive law of Virginia. Virginia's choice of law rules therefore apply in this matter.

#### 2. Virginia's Choice of Law Rules

##### a. Choice of Law Clauses in Contracts

 Virginia has long recognized that parties to a contract may agree in advance which jurisdiction's law will apply to their transaction. *See Union Central Life Ins. Co. v. Pollard,* 94 Va. 146, 26 S.E. 421, 422 (1896). In *Pollard,* the parties included language in their contract to the effect that it would be "held and construed to have been made in the city of Cincinnati, Ohio." *Id.* The court held that "[t]he contract of insurance having been made with reference to the laws of the state of Ohio, the plaintiff had the right to rely upon them in enforcing his contract so far as they related to its validity, nature, interpretation, and effect." *Id.*

Subsequent Virginia cases have reenforced the parties' right to select the law applicable to their transaction. *See Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140, 1143 (W.D.Va.1979) ("parties to a contract may stipulate the governing law: 'Where ... the parties to the contract have themselves expressly declared that their contract shall be held and construed as made with reference to a certain jurisdiction, that shows by what law they intended the transaction to be governed.'") (quoting *Pollard* ); *Paul Business Systems, Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804 (1990) (discussing Virginia's acceptance of analogous "forum selection" clauses).

##### b. Virginia's Public Policy Against Arbitration Outside Virginia

 At least at first glance, then, Kentucky law applies to this dispute. Forum selection or choice of law clauses, however, are not without limits. "Comity does not require the application of another state's substantive law if it is contrary to the public policy of the forum state." *Willard v. Aetna Cas. & Sur. Co.,* 213 Va. 481, 193 S.E.2d 776 (1973) (citing *State of Maryland v. Coard,* 175 Va. 571, 9 S.E.2d 454, 457 (1940)).

The contract at issue contains a forum selection clause which states that "[t]he site for mediation and arbitration shall be at the Project site, or in Glasgow, Kentucky, or Lexington, Kentucky, as selected by Gray ...." Gray has, pursuant to that forum selection clause, chosen Kentucky as the site for the arbitration. This clause is apparently not in conflict with Kentucky law.

The plaintiff asserts, however, that Va. Code Ann. § 8.01–262.1 requires that the arbitration be held in Virginia. That section of the Code reads:

> The forum for any arbitration proceeding required in such a [construction] contract ... shall be in this Commonwealth. If the contract provides for arbitration proceedings outside the Commonwealth, such provision is unenforceable and the arbitration proceeding shall be in the country or city where the work is performed.

In my opinion, this section of the Virginia Code expresses a policy that disputes arising from construction contracts which are to be performed in Virginia should be resolved in Virginia. As a result, the application of Kentucky law, requiring the arbitration to occur outside Virginia, would offend the public policy of the Commonwealth of Virginia. *See Willard,* 193 S.E.2d at 777.

### C. APPLICATION OF THE FAA

 The plaintiff has not seriously contested the defendant's assertion that the FAA is, in some manner, applicable to the contracts at issue. The Federal Arbitration Act is applicable to proceedings to enforce the arbitration provisions of contracts affecting interstate commerce. *See* 9 U.S.C. § 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or trans-

action ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 381 (4th Cir.1998). "The Federal Arbitration Act is thus applicable to cases removed from state court to federal court on the basis of diversity jurisdiction where the arbitration provision is part of a contract evidencing a transaction involving commerce." *Coady v. Ashcraft & Gerel*, 996 F.Supp. 95, 99–100 (D.Mass.1998) (quotations omitted). The contracts at issue involve interstate commerce[4] and therefore clearly fall under the FAA.[5]

### D. PREEMPTION BY THE FAA

The question here is whether the Virginia law runs afoul of various FAA provisions. Traditionally, preemption claims have focused on language in the FAA that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court stated that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *see also Saturn Distribution Corp. v. Williams*, 905 F.2d 719 (4th Cir.1990); *S+L+H S.p.A. v. Miller–St. Nazianz, Inc.*, 988 F.2d 1518 (7th Cir.1993).

By enacting § 2 of the Federal Arbitration Act, Congress "declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Keating*, 465 U.S. at 10, 104 S.Ct. 852. "Under the Supremacy Clause, the Federal Arbitration Act pre-empts state statutes in unmistakable conflict with the federal policy embodied in § 2 of the Act." *Haluska v. RAF Financial Corp.*, 875 F.Supp. 825,

828 (N.D.Ga.1994) (citing *Perry v. Thomas*, 482 U.S. 483, 491, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Section 2 is a congressional declaration of "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The First Circuit addressed the issue of state laws which restrict arbitration forum choice in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155 (1st Cir.1983), *rev'd in part on other grounds*, 473 U.S. 614, 622 n. 8, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In that case, the defendant asserted that an arbitration agreement was void because "Puerto Rican law does not recognize any arbitration agreement that obligates a dealer to ... arbitrate ... any controversy ... regarding [the] dealer's contract outside of Puerto Rico, or under foreign law or rule of law." *Id.* at 158 (quoting 10 L.P.R.A. § 278b–2) (internal quotations ommitted). The Court of Appeals squarely rejected the defendant's argument, noting that "federal law preempts the direct application of section 278b–2." *Id.* In *Protane Gas Co. of Puerto Rico, Inc. v. Sony Consumer Products Co.*, 613 F.Supp. 215 (D.C.Puerto Rico 1985), the court made a similar finding, citing the decision in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*

Other cases support the First Circuit's decision. Although many FAA preemption cases involve state statutes which entirely preclude arbitration of certain types of disputes, outright preclusion of arbitration is not necessary for preemption under the FAA. In *Good(E) Business Systems, Inc. v. Raytheon Co.*, 614 F.Supp. 428 (W.D.Wis. 1985), the court rejected a plaintiff's argument that "the Wisconsin Fair Dealership Law does not prohibit arbitration of fair dealership claims, but simply requires that for fair dealership claims to be arbitrable the arbitration agreement must comply with Wis.

---

4. *See Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 n. 4 (4th Cir.1985); *American Home Assur. Co. v. Vecco Concrete Const. Co., Inc. of Virginia*, 629 F.2d 961, 963 (4th Cir.1980).

5. The other main limitation of the FAA, the "employment contract" exclusion, *see O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997), is inapplicable because neither of the contracts at issue was an employment contract.

Stats. § 135.05." *Id.* at 431. The court held that "limitations placed by a state on the enforceability of arbitration agreements necessarily conflict with § 2, even if those limitations *do not amount to a complete* preclusion of arbitrability." *Id.* (emphasis provided).

Similarly, in *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 806–07 (8th Cir.1986), the court held that the FAA preempted a Missouri statute which required "all arbitration provisions to be accompanied by a notice, in ten point capital letters, that the contract contains a binding arbitration provision." *Id.* (cited with approval by the Fourth Circuit in *Saturn Distrib. Corp.*).

Moreover, the Virginia statute conflicts with § 4 of the FAA. That section allows a party to file a petition in a district court to compel another party to arbitrate pursuant to a prior written agreement. Section 4 states that, "the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*" 9 U.S.C. § 4 (emphasis provided). Because it effectively negates arbitration forum selection clauses in construction agreements, such as the one at issue here, Va. Code Ann. § 8.01–262.1, "obstruct[s] the realization and execution of Congressional objectives regarding the Act." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 452 (4th Cir.1997).

Based on the previous analysis, I have no doubt that the FAA preempts Va.Code Ann. § 8.01–262.1. As a result, the contract provision which allows the defendant to select Kentucky as the site of the arbitration should be applied, notwithstanding its conflict with the Virginia statute.

### E. LIMITATIONS ON RELIEF UNDER THE FAA

#### 1. *Territorial Limitations*

▆ The FAA "expressly provides that the hearing and proceeding shall be within the district in which the petition for the order directing the arbitration is filed." *Continental Grain Co. v. Dant & Russell,* 118 F.2d 967, 968 (9th Cir.1941) (quoting 9 U.S.C. § 4); *see also Econo–Car Intern., Inc.*

*v. Antilles Car Rentals, Inc.,* 499 F.2d 1391 (3d Cir.1974) (holding that district court in Virgin Islands could not compel arbitration in New York, despite provision of the arbitration agreement); *Haluska v. RAF Financial Corp.,* 875 F.Supp. 825, 828 (N.D.Ga.1994) (holding that court could not compel arbitration in Denver, Colorado). Cases within the Fourth Circuit have interpreted the clear language of the statute in a similar fashion. *See International Refugee Organization v. Republic S.S. Corp.,* 93 F.Supp. 798, 804 (D.Md.1950), *rev'd on other grounds,* 189 F.2d 858 (4th Cir.1951).

As a result of the territorial limitations in § 4, I cannot enter an order compelling arbitration in Kentucky. Nor can I order arbitration to proceed in Virginia, as the plaintiff has requested. *See* 9 U.S.C. § 4 ("the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of their agreement"); *Haluska,* 875 F.Supp. at 828 ("The Court, however, cannot rewrite the parties' contract and provide an arbitration situs that was not enumerated in the forum selection clause of the arbitration agreement").

My options are somewhat limited. Faced with the same situation, courts have either (1) *dismissed* the federal action, *see Snyder v. Smith,* 736 F.2d 409 (7th Cir.1984),[6] (2) *stayed* the action, *see Messing v. Rosenkrantz,* 872 F.Supp. 539 (N.D.Ill.1995) or (3) *transferred* the action to the appropriate federal district court, *see Optopics Laboratories Corp. v. Nicholas,* 947 F.Supp. 817, 825 (D.N.J.1996); *Bao v. Gruntal & Co.,* 942 F.Supp. 978, 983 (D.N.J.1996).

#### 2. *Transfer of Matter to the Proper District*

▆ In its brief, the defendant asserts that it "demanded arbitration and selected Lexington, Kentucky, as the arbitration venue in accordance with the arbitration clauses." Memorandum in Support of Defendant's Motion for Summary Judgment at 1. I will therefore enter an Order transferring this matter to the United States District

---

**6.** *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998).

Court for the Eastern District of Kentucky, Lexington Division.

There is another brief matter: Should the transfer should be pursuant to § 1404(a)[7] or § 1406(a)?[8] Several courts dealing with an agreement that has a forum selection clause for *in court litigation* have transferred cases under § 1406(a), reasoning that a forum selection clause was also a venue selection clause. *See, e.g., Hoffman v. Burroughs Corp.,* 571 F.Supp. 545, 550 (N.D.Tex.1982). These courts reasoned that venue was improper if the suit was first brought in a location other than the designated forum, and that a transfer to the proper forum would have to be carried out under § 1406(a). *Id.*

The instant case is distinguishable: The parties have never designated a preferred venue for in court litigation, but only a preferred site for arbitration. *See Optopics Laboratories Corp.,* 947 F.Supp. at 825. As noted above, it is the FAA's limitation on compelling arbitration outside of this district that requires a transfer, not the § 1391 venue rules. The transfer should, under this line of reasoning, be made under § 1404(a).[9] I believe that venue was proper in this case under § 1391 and that the transfer should be made pursuant to § 1404(a).

## IV. CONCLUSION

For the reasons stated above, I am of the opinion that, (1) the plaintiff's motion should be DENIED, (2) the defendant's motion for summary judgment should be GRANTED as to the defendant's counterclaim for a declaratory judgment that the Federal Arbitration Act preempts Va.Code Ann. § 8.01–262.1 and (3) because I am without power to compel the plaintiff to arbitrate this matter in Kentucky,

the case should be transferred to the United States District Court for the Eastern District of Kentucky, Lexington Division for further proceedings.

7. Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

8. Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

9. At least one court has transferred an arbitration case with a forum selection clause under § 1406(a). *See Bao,* 942 F.Supp. at 983. The *Bao* court did not, however, explain the reasons for its action. In any event, there would be little difference in this case between a § 1404(a) and a § 1406(a) transfer: As I have noted above, the parties' contracts have a choice of law provision, and the FAA preempts any inconsistent Virginia law, so there will be no appreciable difference between the substantive law that this court and the transferee court would apply.